**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**


ISAAC LAMONT WILLIAMS,       )
                                  )
        Petitioner,        )
                                  )
        v.                   )       1:10CR111-1
                                  )       1:13CV326
UNITED STATES OF AMERICA,   )
                                  )
        Respondent.       )


### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Petitioner's Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255 ("Section 2255 Motion") (Docket Entry 84), as supplemented (Docket Entry 91), as well as on his Motion for Leave to File Amended § 2255 [Motion] (Docket Entry 98).[1]  For the reasons that follow, the Court should deny the instant Motions.

### I.  INTRODUCTION

The Court (per United States District Judge Thomas D. Schroeder) previously entered a Judgment against Petitioner imposing, <u>inter alia</u>, a prison term of 250 months, after a jury found him guilty of possessing a firearm as a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (with an offense date of August

---

[1] Parenthetical citations refer to Petitioner's criminal case.

17, 2009).  (Docket Entry 67; <u>see also</u> Docket Entry 33 (Verdict);

Docket Entries 71-74 (Trial Tr.); Docket Entry 76 (Sent'g Hrg.

Tr.).)  The United States Court of Appeals for the Fourth Circuit

affirmed.  <u>United States v. Williams</u>, 468 F. App'x 343 (4th Cir.

2012).[2]  In so doing, the Fourth Circuit stated:

> The evidence against [Petitioner] and in support of the
> conviction was overwhelming.  [He] was identified as the
> person leaving the vehicle after engaging in a high speed
> car chase.  The shotgun was retrieved after it was seen
> being thrown from the vehicle.  It was determined that
> the shotgun was operable and that it had moved in
> interstate commerce. In addition, it was stipulated that
> [Petitioner] had a prior felony conviction.  As
> additional support, we note there was fingerprint
> evidence, video tape recordings and photographs and
> evidence of statements [he] made after his arrest.

<u>Id.</u> at 346.

Petitioner thereafter filed his instant Section 2255 Motion

(Docket Entry 84), along with a Memorandum (Docket Entry 85).

Prior to any response, Petitioner supplemented his instant Section

2255 Motion.  (Docket Entry 91.)[3]  The United States then responded

---

[2] Petitioner's instant Section 2255 Motion reports that he
filed a certiorari petition, which the United States Supreme Court
denied.  (Docket Entry 84, ¶ 7(g).)  Independent research has not
revealed any record of such matters.

[3] Petitioner titled that document a "Motion to Supplement"
(Docket Entry 91), but the Clerk properly docketed it as a
Supplement (rather than a motion) because, at the time of its
filing Petitioner could amend his instant Section 2255 Motion
without leave of the Court, <u>see</u> Fed. R. Civ. P. 15(a)(1)(B); <u>see
also</u> <u>United States v. MacDonald</u>, 641 F.3d 596, 616 n.12 (4th Cir.
2011) (holding that "Rule 15 is applicable to § 2255 motions").

2

(Docket Entry 93) and Petitioner replied (Docket Entry 97). He also filed his instant Motion for Leave. (Docket Entry 98.)

## II. DISCUSSION

Petitioner's instant Section 2255 Motion presents these five grounds for relief:

1) "counsel was ineffective . . . [by] fail[ing] [A] to object, and, or move to strike 'expert' testimony of [a] crime scene technician [] and the testimony of [the] case agent . . . [B] to secure the testimony of Kenya Evans for trial[,] . . . [C] to use the affidavit of Keith Lewis . . . [D] to obtain the owner of the SUV's statement, or [a] subpoena securing [him] as a witness[,] . . . [E] to move the [C]ourt for an informant instruction[,] . . . [F] to properly challenge the Armed Career Criminal enhancement[, and] . . . [G] to obtain *Jenks* [sic] material" (Docket Entry 84, ¶ 10(Ground One));[4]

2) "Petitioner is actually innocent of the 18 U.S.C. § 924(e) conviction" (id., ¶ 10(Ground Two));

3) "prosecutorial misconduct" (id., ¶ 10(Ground Three));

4) "the Court committed plain error when it made findings of fact pertaining concerning [sic] Petitioner's prior convictions" (id., ¶ 10(Ground Four)); and

---

[4] At times, certain of Petitioner's filings use all capital letters, but (for ease of reading) this Memorandum Opinion employs standard capitalization conventions when quoting such filings.

5) Petitioner's "trial was unfair by the cumulative amount of trial errors" (id., ¶ 10(Ground Five)).

Petitioner's Supplement to his instant Section 2255 Motion asserts a further claim that, in light of Alleyne v. United States, ___ U.S. ___, 133 S. Ct. 2151 (2013), his "Sixth Amendment Due Process rights were violated by an enhancement under the Armed Career Criminal Act (ACCA)." (Docket Entry 91 at 1.) Via his instant Motion for Leave, Petitioner proposes to add further arguments challenging his ACCA enhancement, i.e., that, based on the decisions in Miller v. United States, 735 F.3d 141 (4th Cir. 2013) (deeming United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc), retroactive on collateral review), and United States v. Hemingway, 734 F.3d 323 (4th Cir. 2013) (holding that South Carolina's common law offense of assault and battery of high and aggravated nature does not constitute a "violent felony" under ACCA), his prior conviction for "attempt to sell cocaine [in violation of North Carolina law] is not a serious drug offense under [the ACCA,] 18 U.S.C. § 924(e)." (Docket Entry 98 at 1.)

A.  Ground One:  Ineffective Assistance of Counsel

To make out an ineffective assistance claim, Petitioner must show that his counsel's performance fell below a reasonable standard for defense attorneys and that prejudice resulted. See Strickland v. Washington, 466 U.S. 668, 687–94 (1984). "Surmounting *Strickland*'s high bar is never an easy task. . . .

4

[T]he standard for judging counsel's representation is a most deferential one." Harrington v. Richter, 562 U.S. 86, 105 (2011) (internal quotation marks omitted); see also Strickland, 466 U.S. at 689 ("[C]ourt[s] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ."). All of Petitioner's ineffective assistance of counsel claims fail as a matter of law.

### 1. Prosecution Witness Testimony

Ground One first alleges that Petitioner's counsel rendered ineffective assistance by failing "to object, and, or move to strike 'expert' testimony of [a] crime scene technician [] and the testimony of [the] case agent [] concerning false statements of fact, and, or inconsistent statements, namely grand jury testimony." (Docket Entry 84, ¶ 10(Ground One).) The "[s]upporting facts" for such claim supposedly appear in Petitioner's "Memorandum of Law in Support." (Id., ¶ 10(Ground One)(a).) However, the section of said Memorandum corresponding to the instant claim does not identify any factual matter showing that Petitioner's counsel acted unreasonably by refraining from objecting to any testimony, much less that any prejudice resulted. (See Docket Entry 85 at 18-20.) Instead, it merely offers general rhetoric about the obligations of counsel without citing specific testimony or articulating any basis for any objection. (See id.)

Accordingly, this "claim is vague, conclusory, speculative, and unsupported and fails for all these reasons." <u>Cabrera v. United States</u>, Nos. 1:09CR323-1, 1:12CV695, 2014 WL 6386902, at *9 (M.D.N.C. Nov. 14, 2014) (unpublished) (Osteen, Jr., C.J.); <u>see also United States v. Dyess</u>, 730 F.3d 354, 359 (4th Cir. 2013) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." (internal quotation marks omitted)); <u>Cano v. United States</u>, Nos. 1:05CR354-4, 1:09CV321, 2009 WL 3526564, at *3 (M.D.N.C. Oct. 22, 2009) (unpublished) (Dietrich, M.J .) ("Petitioner has provided only conclusory allegations which meet neither the error nor the prejudice prong of the *Strickland* analysis."), <u>recommendation adopted</u>, slip op. (M.D.N.C. Dec. 29, 2009) (Beaty, C.J.).[5]

_____

[5] Petitioner appealed the admission of certain, specific testimony by a crime scene technician and a federal agent. <u>See Williams</u>, 468 F. App'x at 344 (addressing request for reversal based on the Court's "allow[ing] the crime scene technician to testify about retrieving palm prints from the vehicle" and "permitting an FBI agent to testify about whether he believed the shotgun was operable"). The Fourth Circuit "reviewed the challenged testimony and conclude[d] there was no error . . . ." <u>Id.</u> at 345. Petitioner cannot re-litigate that matter via the instant Section 2255 Motion. <u>See Dyess</u>, 730 F.3d at 360; <u>see also Torres v. United States</u>, Nos. 1:06CR255, 1:09CV226, 2010 WL 2342462, at *3 (W.D.N.C. June 8, 2010) (unpublished) ("While [the p]etitioner raises his present claim under the rubric of ineffective assistance of counsel, because he challenged precisely the same underlying conduct on appeal and the challenge was rejected, [the p]etitioner, at a minimum, cannot establish that he was prejudiced."), <u>appeal dismissed</u>, 397 F. App'x 913 (4th Cir. 2010). Moreover, in an attachment to the response by the United States, Petitioner's counsel averred that "[t]he testimony of [the]
(continued...)

## 2.  Defense Evidence

Next, Ground One complains that Petitioner's counsel should have "secure[d] the testimony of [Ms.] Evans for trial," should have "use[d] the affidavit of [Mr.] Lewis which showed that Petitioner was not the person who fired the firearm, but [Ms.] Evans was the individual who fired the weapon," and should have "obtain[ed] the owner of the SUV's statement, or [a] subpoena securing [him] as a witness for the defense[.]"  (Docket Entry 84, ¶ 10(Ground One).)[6]  Again, Petitioner's instant Section 2255

---

[5](...continued)
crime scene technician and [the case agent] . . . was admissible pursuant to Rule 701 and Rule 702 of the Federal Rules of Evidence. . . . [Petitioner's counsel] did not object because [he] believed any objection would have been overruled."  (Docket Entry 93-2 at 1.)  Petitioner's reply offers no basis to question that conclusion by his counsel.  (See Docket Entry 97 at 1-10.)

[6] As noted in Section I, Petitioner "was arrested after a high speed car chase and foot pursuit.  Police also seized a shotgun that was thrown from the vehicle."  Williams, 468 F. App'x at 344. The trial witnesses included a cab-driver who: 1) testified that, in the early morning hours of August 17, 2009, while waiting to pick-up a fare in the Cleveland Homes area of Winston-Salem, North Carolina, he saw a black male discharge a shotgun after removing it from an "SUV" style vehicle; and 2) identified Government Exhibit 1 as a photograph of that vehicle.  (Docket Entry 71 at 42-46.) Additionally, Winston-Salem Police Department Corporal Michael Knight testified that, at the same time on that date, he responded to the same area to investigate a shotgun blast.  (Id. at 63.)  "As [he] w[as] responding, [officers] were getting updates across the radio that there was possibly a silver-jeep-type vehicle [that] was involved . . . .  [Corporal Knight then] saw a silver SUV coming in [his] direction. . . .  It appeared to be a silver Montero."  (Id. at 65-66.)  A chase ensued (see id. at 66-69), during which Corporal Knight "observed what [he] believed to be a rifle thrown out of the [SUV's] driver's side window" (id. at 69; see also
(continued...)

7

Motion identifies his "Memorandum of Law in Support" as the source of "[s]upporting facts" for said claim(s). (Id., ¶ 10(Ground One)(a).)

That Memorandum offers these factual allegations regarding Ms. Evans, Mr. Lewis, and the SUV owner:

> Counsel for the defense possessed information, in the form of a notarized affidavit from Ms. Evans, which would completely contradict the government's position of [Petitioner] possessing a firearm. Ms. Evans would have testified that [Petitioner] was not present when the firearm was discharged, and had no involvement in the incident.
>
> Ms. Evans' affidavit states that she was in the company of a Hispanic man when he was involved in a conflict with another man concerning an amount of counterfeit crack cocaine. During the altercation, the Hispanic man went to his truck to retrieve a shotgun, which he then discharged. At that time both he and Ms. Evans ran to the truck and drove away.
>
> . . . .
>
> Defense counsel failed to utilize the information given him, also in the form of a notarized affidavit, by Keith Lewis. Mr. Lewis asserts he was present at the Cleveland

---

[6](...continued)
Docket Entry 72 at 43-44 (describing recovery of shotgun from the gutter in front of 2041 Lincoln Avenue), 131 (identifying 2041 Lincoln Avenue as address at which shotgun was thrown out)). The SUV eventually reached a dead-end and "the driver at that point opened the driver's door and fled on foot." (Docket Entry 71 at 70.) Corporal Knight and other officers "initiated a foot pursuit at that time." (Id. at 72; see also id. at 73 ("[The driver] appeared to be a black male, no shirt, dark shorts.").) Within "two to three minutes," Corporal Knight found "a black male, no shirt, dark shorts crouched down hiding behind a bush . . . ." (Id. at 74.) Corporal Knight identified Petitioner as that individual (id. at 75) and Government Exhibit 1 as a photograph of the SUV from which Petitioner fled on foot (id. at 81).

Home Projects when Ms. Evans and the Hispanic man came up to buy crack cocaine. The Hispanic man and the cocaine dealer began fighting, and then the Hispanic man went to his truck, pulled a shotgun out and fired the weapon before fleeing in the truck.

. . . .

Defense [counsel] was again inadequate by failing to secure the testimony of David Morga, the owner of the SUV involved in the police pursuit. Following the gathering of evidence by the police, the vehicle was released to [Mr.] Morga, who would testify that he did not identify the person who had borrowed the vehicle as [Petitioner] when interviewed by the police. However, the government denies that [Mr.] Morga was questioned by the police as to who he ([Mr.] Morga) had lent his vehicle to on the day in question. [Petitioner] repeatedly emphasized the import of [Mr.] Morga's testimony to counsel, and counsel made some small efforts to placate [Petitioner], eventually saying [Mr.] Morga, who had been detained by Federal authorities for immigration issues, could not be located within the system.

(Docket Entry 85 at 21-23 (citations to attachments omitted).)

To said Memorandum, Petitioner attached a purportedly sworn (but unnotarized) statement bearing the apparent signature of Ms. Evans (id. at 45-46), an affidavit evidently signed (under penalty of perjury) by Mr. Lewis (id. at 48), and a notarized, sworn declaration by Mr. Morga (id. at 50). Ms. Evans's statement generally matches the above-quoted proffer of her testimony set forth in Petitioner's Memorandum (compare id. at 21, with id. at 45-46); however, contrary to the allegations in said Memorandum (quoted above), Mr. Lewis's affidavit makes no mention of Cleveland Home Projects, Ms. Evans (at least by name), crack cocaine, a fight between a cocaine dealer and a man, or the retrieval of a firearm

9

from a truck, although it does state that Mr. Lewis "was present on August 17, 2009, when the incident concerning a gunshot occurred; . . . [t]hat [he] witnessed the person or persons firing the gun; . . . [t]hat [he] witnessed the persons run to a truck and drive away after the gun was fired; . . . [t]hat the persons with the gun were a Hispanic male and an African American female; [and] . . . [t]hat [he is] familiar with [Petitioner] and can readily recognize him" (id. at 48).[7]  Mr. Morga, in turn, swore that:  1) he "owned a 2002 Montero Sport SUV" (id. at 50); 2) "on approximately, August 17, 2009, [he] lent the vehicle to a person not [Petitioner]" (id.); 3) "to [his] knowledge, [Petitioner] neither exercised control over the vehicle, nor was a passenger in the vehicle" (id.); 4) he "retrieved the vehicle from the impound lot following the incident for which [Petitioner] was arrested" (id.); and 5) he never was "interviewed by the police concerning who had the use of the vehicle" (id.).  The foregoing allegations and attachments fall short of establishing ineffective assistance of counsel.

_____

[7] Petitioner thus has presented three different versions of Mr. Lewis's account.  First, Ground One of Petitioner's instant Section 2255 Motion asserts that, according to Mr. Lewis, "[Ms.] Evans was the individual who fired the weapon . . . ."  (Docket Entry 84, ¶ 10(Ground One).)  Second, Petitioner's Memorandum states that Mr. Lewis described an "Hispanic man . . . fir[ing] the weapon . . . ."  (Docket Entry 85 at 21-22.)  Third, Mr. Lewis's actual affidavit identifies a "person or persons [as] firing the gun . . . [and describes] the persons with the gun [as] a Hispanic male and an African American female . . . ."  (Id. at 48.)

First, on direct appeal, Petitioner raised the issue of Mr. Morga's absence from the trial and the Fourth Circuit found no prejudice, particularly given that "the evidence against [Petitioner] was overwhelming." Williams, 468 F. App'x at 346; see also Appellant's Brf., United States v. Williams, No. 11-4592, 2011 WL 4836164, at *35 (4th Cir. Oct. 11, 2011) ("The United States knew that [Mr. Morga, a/k/a] 'Migo' was involved in this offense because his SUV was used to flee from the police during a high speed chase. The United States also knew of Migo's habit of loaning his SUV to others for crack. Despite Migo's involvement, and [Petitioner's] consistent claim that Migo or someone else was driving Migo's SUV during the high speed chase, the United States deported Migo in violation of [Petitioner's] Sixth Amendment Compulsory Process rights."). That conclusion precludes relief on an ineffective assistance claim based on any failure by Petitioner's counsel to secure Mr. Morga's trial testimony. See, e.g., Eaton v. Angelone, 139 F.3d 990, 994 (4th Cir. 1998) ("[I]n the face of the [prosecution's] overwhelming evidence, we can ascribe no prejudice to any alleged errors by counsel . . . ."); United States v. Hubbard, 22 F.3d 1410, 1422 (7th Cir. 1994) ("The prejudice prong of Strickland requires a showing that the incompetence [of counsel in failing to present a witness] made the trial fundamentally unfair or made the convictions unreliable. . . . Th[e] overwhelming evidence against [the

11

defendant] prevents him from meeting the high prejudice standard of
*Strickland*." (internal quotation marks omitted)); <u>Barry v. United
States</u>, No. 14CV5898(RJD), 2015 WL 3795866, at *2 (E.D.N.Y. June
17, 2015) (unpublished) ("On [the petitioner's] direct appeal, the
Second Circuit found that there was overwhelming evidence of [his]
guilt and thus confidently concluded that any evidentiary error was
harmless.  In this [c]ourt's view, these appellate determinations
foreclose [the petitioner's] ability to establish that any of
counsel's supposed trial errors caused him prejudice within the
meaning of *Strickland*." (internal brackets, citations, and
quotation marks omitted)).[8]

_____

[8] In rejecting Petitioner's appeal as to Mr. Morga's absence
from the trial, in addition to citing the overwhelming evidence of
Petitioner's guilt, the Fourth Circuit also described the argument
that Mr. Morga "would have offered exculpatory testimony [a]s
speculative at best." <u>Williams</u>, 468 F. App'x at 345-46.  Although
Petitioner's obtaining of a sworn statement from Mr. Morga arguably
reduces the level of speculativeness associated with his testimony,
the substance of that sworn statement (quoted above) actually
reinforces the finding that no prejudice resulted from any failure
by Petitioner's counsel to secure Mr. Morga's testimony for trial.
In particular, as the United States has observed, Mr. Morga's
girlfriend "testif[ied] at trial that the Montero [involved in this
incident] was [Mr.] Morga's . . ., that he (Mr. Morga) lent it out
for drugs . . ., [and] that Mr. Morga met the general description
of Petitioner . . . ."  (Docket Entry 93 at 8 (citing Docket Entry
73 at 5-9).)  That evidence afforded Petitioner's counsel at least
as good (if not a better) basis to argue that someone other than
Petitioner possessed the shotgun in and around the Montero on the
night in question as Petitioner's counsel would have enjoyed if Mr.
Morga had testified that, on or about the date of the incident, he
lent the Montero to someone other than Petitioner and lacked
personal knowledge of Petitioner driving or riding in the Montero.
In any event, Mr. Morga's proffered testimony carries little, if
(continued...)

As to Ms. Evans and Mr. Lewis, Petitioner has asserted that his counsel should have "secure[d] the testimony of [Ms.] Evans for trial" (Docket Entry 84, ¶ 10(Ground One)) and that she "would have testified that [he] was not present when the firearm was discharged, and had no involvement in the incident" (Docket Entry 85 at 21), but Petitioner has alleged neither that his counsel should have called Mr. Lewis as a witness nor that Mr. Lewis would have testified favorably to Petitioner (see Docket Entry 84, ¶ 10(Ground One); Docket Entry 85 at 22; Docket Entry 97 at 1-10). Instead, Petitioner has contended that his counsel should have "use[d] the affidavit of [Mr.] Lewis which showed that Petitioner was not the person who fired the firearm, but [Ms.] Evans was the individual who fired the weapon . . . ." (Docket Entry 84, ¶ 10(Ground One).) Petitioner, however, has not shown how his counsel could have "used" such an affidavit at trial, given the general inadmissibility of hearsay, see Fed. R. Evid. 802, defined as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the

_____

[8](...continued)
any, exculpatory value, because it did not exclude the possibility that the unidentified person to whom Mr. Morga reportedly loaned the Montero subsequently loaned it to Petitioner. Such marginally-beneficial defense evidence cannot provide a basis for a finding of prejudice under Strickland, given the Fourth Circuit's assessment of the evidence of Petitioner's guilt as "overwhelming."

13

statement," Fed. R. Evid. 801(c); see also Hennings v. Ditter, No. No. 06-C-353-C, 2007 WL 5514746, at *3 (W.D. Wis. June 14, 2007) (unpublished) ("[A] party may not introduce affidavits into evidence or read from them at trial because they are hearsay statements, made outside the court."). (See Docket Entry 84, ¶ 10(Ground One); Docket Entry 85 at 22; Docket Entry 97 at 1-10.)

Lastly, assuming that Petitioner's counsel could have secured Ms. Evans and/or Mr. Lewis as trial witnesses and that Petitioner's counsel knew that they might have testified to at least some of the information now proffered by Petitioner, pursuant to Strickland, the Court "must indulge a strong presumption that, under the circumstances, [an attorney's] action might be considered sound trial strategy. The difficulty of overcoming that general presumption is even greater in this case, given that the decision whether to call a defense witness is a strategic decision demanding the assessment and balancing of perceived benefits against perceived risks, and one to which [the Court] must afford enormous deference." United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004) (internal citation, ellipses, and quotation marks omitted) (emphasis added); see also Cox v. United States, Nos. 3:05CR74, 3:08CV201, 2011 WL 3322590, at *6 (W.D.N.C. Aug. 2, 2011) (unpublished) ("The decision whether to call any witnesses . . . is a tactical decision of the sort engaged in by defense attorneys in almost every trial. Such decisions also are entitled to great

deference." (internal citation and quotation marks omitted)). Petitioner cannot overcome that strong presumption of enormous deference to counsel's strategic decision-making in this instance.

In that regard, the uncontested record reflects that:

1) at trial, Petitioner enjoyed representation by "a Board Certified Specialist in State and Federal Criminal Law" (Docket Entry 93-2 at 1), who had served as "a CJA Panel Member since approximately 2005" (id.);

2) said counsel "did not subpoena or seek to call [Ms.] Evans as a witness because [Petitioner] and [counsel] both determined that [Ms. Evans's] testimony would ultimately be harmful" (id. at 2; see also id. ("[Petitioner] and I discussed whether to use Ms. Evans or not on many occasions. . . . I felt and still feel that, even if she got on the stand and exonerated [Petitioner], the net effect would be to hurt [his] case. . . . Both [Petitioner] and I agreed not to call Ms. Evans.");

3) Petitioner's counsel had access to a statement from a law enforcement officer documenting Ms. Evans's prior account of the incident in question in which she "advised that [Petitioner] got the shotgun from inside the vehicle and discharged (1) one round into the air" (id.; see also id. ("As soon as [Ms. Evans] testified, [the prosecutor] would ask her if she told [a law enforcement officer] that [Petitioner] fired the shotgun and drove the vehicle. Even if she denied the statement, the damage would be

15

insurmountable. . . . [The prosecutor] would then call [the law
enforcement officer who took the prior statement from Ms. Evans] in
rebuttal to repeat the statement.”));

4) because Mr. Lewis had previously “indicated that he saw the
confrontation [in question and] . . . that [Petitioner] was not
involved [but] that a ‘Mexican’ fired a shotgun,” Petitioner’s
counsel “filed a motion to have Mr. Lewis brought in for
[Petitioner’s] trial . . . [and] met with Mr. Lewis at the jail
[during which time Mr. Lewis] . . . eventually stated that on some
unknown date, he was on [the street where this incident occurred]
and saw a ‘dark-skinned’ male in shorts get into an altercation and
fire a shotgun into the air . . . [which] description . . . could
fit either [Petitioner] or a ‘Mexican’” (id. at 3);

5) “[t]he next morning, [Petitioner’s counsel] spoke with
[Petitioner] about Mr. Lewis . . . [and counsel’s concerns about]
what Mr. Lewis would say on the stand and that he might describe
[Petitioner]” (id.);

6) Petitioner and his counsel “agreed not to call Mr. Lewis”
(id.); and

7) “before [Petitioner’s counsel] rested the defense case at
trial, . . . [Petitioner] told [the Court] that he did not wish to
call any other witnesses” (id. at 2; see also Docket Entry 73 at 68
(documenting Petitioner’s statement to the Court at the conclusion

of the defense case that he agreed with his counsel's recommendation not to call any additional witnesses)).

In sum, as the United States observed (with specific reference to the decision not to call Ms. Evans, but with equal applicability to the decision not to call Mr. Lewis), the conduct of Petitioner's counsel "was not ineffective assistance, but sound trial strategy . . . . In addition, . . . Petitioner's current claim [that] his counsel was ineffective by not calling [Ms.] Evans [and Mr. Lewis] is flatly contradicted by [Petitioner's] agreement with that strategic decision on the record." (Docket Entry 93 at 6.) The Court thus should deny all three of Petitioner's defense witness-related ineffective assistance of counsel claims.

### 3. Informant Instruction

Via Ground One, Petitioner also seeks relief by asserting that his counsel did not "move the [C]ourt for an informant instruction which prejudice [sic] [] [P]etitioner at trial." (Docket Entry 84, ¶ 10(Ground One).) However, the United States properly has noted that Petitioner's counsel "requested an informant instruction and the [] [C]ourt gave it. This allegation is directly refuted by the record." (Docket Entry 93 at 8 (internal citations omitted) (citing Docket Entry 73 at 71); see also Docket Entry 29 at 14 (setting out defense request for informant instruction).) Petitioner therefore cannot make out a claim for ineffective assistance concerning the requesting of an informant instruction.

## 4. ACCA Enhancement

Ground One additionally charges that Petitioner's counsel provided ineffective assistance by failing "to properly challenge the [ACCA] enhancement [in this Court] and on appeal." (Docket Entry 84, ¶ 10(Ground One).) Once more, the instant Section 2255 Motion points to Petitioner's "Memorandum of Law in Support" for "[s]upporting facts" as to such claim(s). (Id., ¶ 10(Ground One)(a).) Turning there, one finds the following:

> In enhancing [Petitioner's] sentence under the ACCA, the government introduced, and the [C]ourt adopted as predicates, offenses not meeting the requirements outlined in the ACCA statute. Further, counsel failed to challenge the premise that an attempt offense qualifies as a "serious drug offense" when it contains no overt act toward the completion of the primary drug offense, notwithstanding no case law exists to guide in the application of the ACCA as related to attempted drug offenses.
>
> Also, counsel failed to challenge the application of the ACCA statute in considering [Petitioner's] prior state sentence under a habitual criminal statute, the underlying offense, of which enhanced state sentence does not qualify as an ACCA predicate.

(Docket Entry 85 at 26.)

"The ACCA mandates a minimum fifteen-year prison sentence for a person convicted of unlawful possession of a firearm who 'has three previous convictions for a violent felony or a serious drug offense, or both, committed on occasions different from one another.'" United States v. Archie, 771 F.3d 217, 223 (4th Cir. 2014) (quoting 18 U.S.C. § 924(e)(1)) (internal brackets and

18

ellipsis omitted). The record reflects that Petitioner's Presentence Report ("PSR") invoked the ACCA based on "three predicate felonies . . . . One was the . . . attempted sale of cocaine . . . [in] paragraph 26 of the [PSR] . . . . The other[] [two] were the armed robberies . . . [in] paragraph 44 [of the PSR[.]" (Docket Entry 76 at 9-10.)

Petitioner (through his then-counsel)[9] objected, "contend[ing] that he does not qualify [for the ACCA enhancement] in that 1) Attempt to Sell and Deliver Cocaine is not a 'serious drug offense' as defined in 18 U.S.C. § 924(e)(2)(A)(ii) and 2) the Robbery With Dangerous Weapon convictions did not occur on 'occasions different from one another' . . . as required by 18 U.S.C. § 924(e)(1) . . . [and thus] only one of these [two armed robbery] convictions can be used as a predicate for ACC[A] status." (Docket Entry 41 at 2.)[10] In so doing, Petitioner's counsel made the following argument:

_____

[9] After the filing of objections to the PSR, but before sentencing, the Court permitted Petitioner's original counsel to withdraw and appointed new counsel. (Docket Entries 43, 44.) After entry of judgment, the Fourth Circuit appointed yet another attorney to represent Petitioner on appeal. (Docket Entry 69.)

[10] Under this Court's Local Criminal Rule 32.3, Petitioner's PSR constitutes a confidential document and both parties properly filed their sentencing memoranda under seal. Nonetheless (as shown above and below), the facts related to the ACCA issue became a matter of public record at Petitioner's sentencing in open court. As a result, to the extent the Court must consider portions of the PSR and related filings in order to resolve the instant claims, disclosure herein of such matters may occur and does not alter the sealed status of the underlying documents. See United States v. Reeves, 586 F.3d 20, 22 n.1 (D.C. Cir. 2009).

> Unlike the definition for "violent felonies," the
> definition for "serious drug offense" does not include
> any reference to attempt.  While there does not appear to
> be any Fourth Circuit case law on the issue, a plain
> reading of the statute indicates that Attempt to Sell and
> Deliver Cocaine in [paragraph 26 of the PSR] does not
> come within the definition of "serious drug offense."

(Id. at 4 (referencing 18 U.S.C. § 924(e)(2)).)  The United States
responded that not only did the attempted sale of cocaine
conviction and two armed robbery convictions constitute ACCA
predicates, but that, under United States v. Rodriquez, 553 U.S.
377 (2008), Petitioner's conviction for possession with intent to
sell and deliver ("PWISD") cocaine as an habitual felon (in
paragraph 40 of the PSR) did as well.  (Docket Entry 60 at 3-9.)

At sentencing, Petitioner's new counsel preserved the
objection to the attempted sale of cocaine conviction serving as an
ACCA predicate, but stated that he viewed the challenge to the use
of both armed robbery convictions as ACCA predicates as the better
argument.  (See Docket Entry 76 at 10-16.)  Petitioner's counsel
also argued against the Court considering the PWISD cocaine as an
habitual felon conviction for ACCA purposes.  (See id. at 16-21.)
The Court overruled the objections to the ACCA enhancement,
concluding that the attempted sale of cocaine, the PWISD cocaine as
an habitual felon, and at least one of the armed robbery
convictions qualified as proper predicates.  (See id. at 24-26.)

On appeal, Petitioner (through his third counsel) "claim[ed]
that his [] conviction for attempt to sell cocaine should not have

been considered a serious drug offense for purposes of [the ACCA] because it does not involve the manufacturing, distributing or possession of a controlled substance." <u>Williams</u>, 468 F. App'x at 346. The Fourth Circuit rejected that contention, holding:

> The ACCA defines a serious drug offense as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C.A. § 924(e)(2)(A)(ii).

> As noted in [<u>United States v. Brandon</u>, 247 F.3d 186, 190 (4th Cir. 2001)], the word "involve" should be "read expansively." Clearly, an attempt to distribute, manufacture or possess cocaine would involve conduct defined as a serious drug offense. In <u>United States v. Winbush</u>, 407 F.3d 703, 706-08 (5th Cir. 2005), the appellant claimed that his attempt offense was not a serious drug offense because it was not a completed offense. The court rejected his claim, finding that the use of the word "involve" did not serve to narrow the types of convictions that could be considered for ACCA purposes. We agree and cite as additional support for the conclusion <u>United States v. Alexander</u>, 331 F.3d 116, 130-31 (D.C. Cir. 2003), and <u>United States v. King</u>, 325 F.3d 110, 113-14 (2d Cir. 2003).

<u>Id.</u> at 346-47 (internal ellipsis and one citation omitted).

In light of the foregoing record, Petitioner's claim that his counsel provided ineffective assistance by failing to challenge the use of his attempted sale of cocaine conviction as an ACCA predicate cannot stand. Counsel (both in this Court and on appeal) contested the issue, but the Fourth Circuit affirmed (de novo) the determination that said conviction constituted an ACCA predicate because controlling authority provided for expansive construction

of the term "involve" in the definition of "serious drug offense" and persuasive authority recognized that attempt-type offenses fall within that definition. Petitioner therefore cannot establish deficient performance or prejudice under <u>Strickland</u>.[11]

Beyond claiming ineffective assistance as to the use of the attempted sale of cocaine conviction as a predicate, Petitioner identifies only one other concrete complaint about his counsel's handling of the ACCA issue, i.e., that "counsel failed to challenge the application of the ACCA statute in considering [Petitioner's] prior state sentence under a habitual criminal statute, the underlying offense, of which enhanced state sentence does not qualify as an ACCA predicate." (Docket Entry 85 at 26.) As described above, Petitioner's counsel preserved an objection to this Court counting Petitioner's PWISD cocaine as an habitual felon conviction as an ACCA predicate, but the Court ruled that "the [PWISD cocaine] conviction, even though it is an habitual felon enhanced conviction, the Supreme Court has indicated that it's

---

[11] To the extent Petitioner argues that (either in this Court or on appeal) his counsel should have focused on the question of whether the attempted sale of cocaine conviction encompassed a finding that Petitioner committed an "overt act toward the completion of the primary drug offense" (Docket Entry 85 at 26), he still has failed to meet his burden under <u>Strickland</u> because courts have held that inchoate offenses that require only an offer to sell drugs (without the defendant actually possessing drugs or taking any subsequent steps to obtain drugs) come within the broad reach of the ACCA's definition of "serious drug offense." <u>See, e.g.</u>, <u>United States v. Bynum</u>, 669 F.3d 880, 884-88 (8th Cir. 2012); <u>United States v. Vickers</u>, 540 F.3d 356, 363-66 (5th Cir. 2008).

entirely appropriate for [courts] to consider [such convictions for ACCA purposes] in <u>Rodriquez</u>." (Docket Entry 76 at 25 (internal citation omitted).) Moreover, as the United States stated, Petitioner's appellate counsel has averred that "his research concluded that <u>Rodriquez</u>, as cited by [this] [C]ourt, supported the [ACCA] classification." (Docket Entry 93 at 9 (referencing Docket Entry 93-3, ¶ 3) (internal citation omitted).)

Petitioner has offered no reason to question the foregoing conclusions by this Court and his appellate counsel. (<u>See</u> Docket Entry 84, ¶ 10(Ground One); Docket Entry 85 at 26; Docket Entry 97 at 1-10.) Nor has independent research revealed any support for the view that this Court misconstrued <u>Rodriquez</u> and/or that the Fourth Circuit would have so found if Petitioner had so argued on appeal. As a result, Petitioner cannot establish either deficient performance or prejudice as required by <u>Strickland</u>.

Simply put, Petitioner's ACCA enhancement-related claim(s) of ineffective assistance of counsel lack(s) merit.

## 5. Jencks Material

Finally (as to Ground One), Petitioner has alleged that his counsel acted ineffectively by neglecting "to obtain *Jenks* [sic] material, 18 U.S.C. § 3500." (Docket Entry 84, ¶ 10(Ground One).) Petitioner's supporting brief (designated by him as the repository of "[s]upporting facts" for this claim (<u>see</u> <u>id.</u>, ¶ 10(Ground One)(a))) elaborates as follows:

23

> Upon [Petitioner's] motion, th[is] [C]ourt ruled that [a
> federal agent's] prior statements to the grand jury would
> be made available to [Petitioner] in order to
> cross-examine [said agent].
>
> Yet, despite the [C]ourt's order and the provisions of
> the Jenks [sic] Act, the prior statement of [that] agent
> [] were [sic] not, and to date, have [sic] not been
> inspected by the defense, thus denying [Petitioner] any
> sort of cross-examination of the agent's statements to
> the grand jury, thereby depriveing [sic] [Petitioner] of
> effective assistance of counsel.

(Docket Entry 85 at 27.)  As an initial matter, these allegations

do not describe any professionally unreasonable action (or

inaction) by Petitioner's counsel.  To the contrary, they appear to

indicate that Petitioner's counsel secured a favorable ruling from

the Court on a motion seeking disclosure of grand jury testimony.

Moreover, to the extent Petitioner has contended here that the

United States did not comply with any such order and that his

counsel should have taken some unspecified additional action as a

result, Petitioner's claim fails under Strickland because, in

affirming his conviction, the Fourth Circuit rejected his appeal of

the "den[ial of] access to grand jury testimony," deeming that

assignment of error "without merit . . ., [as he] failed to provide

any substantive evidence showing that the witness gave false or

misleading testimony . . . ."  Williams, 468 F. App'x at 345.

Petitioner cannot re-litigate that matter via the instant Section

2255 Motion.  See Dyess, 730 F.3d at 360; see also Torres v. United

States, Nos. 1:06CR255, 1:09CV226, 2010 WL 2342462, at *3 (W.D.N.C.

24

June 8, 2010) (unpublished) ("While [the p]etitioner raises his present claim under the rubric of ineffective assistance of counsel, because he challenged precisely the same underlying conduct on appeal and the challenge was rejected, [the p]etitioner, at a minimum, cannot establish that he was prejudiced."), appeal dismissed, 397 F. App'x 913 (4th Cir. 2010). And if he could now engage in such re-litigation, he would lose (again), given that:

1) Petitioner has not shown (or even articulated a theory of) how disclosure of the grand jury testimony of this agent could have altered the outcome of the case (see Docket Entry 84, ¶ 10(Ground One); Docket Entry 85 at 26; Docket Entry 97 at 1-10);

2) Petitioner's counsel has averred (without contradiction (see id.)) that this agent's "testimony was not critical to [Petitioner's] central defense; that is, [Petitioner] was not the driver of the [SUV]" (Docket Entry 93-2 at 4; see also Docket Entry 72 at 120-27 (transcribing agent's trial testimony)); and

3) the Fourth Circuit has concluded that "the evidence against [Petitioner] was overwhelming," Williams, 468 F. App'x at 346, see generally Eaton, 139 F.3d at 994 ("[I]n the face of the [prosecution's] overwhelming evidence, we can ascribe no prejudice to any alleged errors by counsel . . . .").

To conclude, Petitioner's final ineffective assistance of counsel claim (like all the others) provides no basis for relief.

25

B.  Ground Two:  Actual Innocence of ACCA Enhancement

In Ground Two of the instant Section 2255 Motion, Petitioner has asserted that he "is actually innocent of the 18 U.S.C. § 924(e) conviction."  (Docket Entry 84, ¶ 10(Ground Two).)  For "[s]upporting facts," Petitioner purports to rely on his "Memorandum of Law in Support" (id., ¶ 10(Ground Two)(a)), which, under the heading "Ground Two" (Docket Entry 85 at 27), states:

> Th[is] [C]ourt erroneously held that [Petitioner's] 1989 conviction for an attempt to sell cocaine is a serious drug offense and used it as a predicate offense to enhance [his] sentence under the [ACCA].
>
> The 1989 conviction does not qualify as a serious drug offense, which by the Act's definition is an offense which carries a potential sentence to imprisonment of ten (10) years or more.
>
> [Petitioner's] conviction of the attempt to sell cocaine could not have carried the prescribed punishment necessary for the ACCA enhancement of ten (10) years or more, as the offense [of which he] was convicted carried a statutory maximum sentence of six (6) years imprisonment.
>
> Moreover, [Petitioner] was sentenced in the state court under a habitual criminal statute, which is not an offense in itself, but rather a sentence enhancement statute.  The offense itself does not qualify as an ACCA predicate.

(Id. at 28.)

This claim lacks merit for at least two reasons.  First, the record confirms that Petitioner's attempted sale of cocaine conviction carried a maximum possible prison sentence of 10 years and did not include any habitual felon enhancement.  (See Docket

26

Entry 60-1 at 1-4.)[12]  Second, even if that attempted sale of
cocaine conviction only became punishable by 10 years in prison due
to an enhancement for habitual felon status, it remains a proper
ACCA predicate, in light of <u>Rodriquez</u>, 553 U.S. at 380-93, as this
Court recognized at sentencing in connection with Petitioner's
PWISD cocaine as an habitual felon conviction (<u>see</u> Docket Entry 76
at 20-21, 25).  Ground Two therefore fails as a matter of law.[13]

---

[12] Although a three-year, presumptive prison term generally
applied to Petitioner's attempted sale of cocaine conviction (<u>see</u>
Docket Entry 60-1 at 1), the sentencing court found that an
aggravating factor existed, that no mitigating factors existed, as
well as that the aggravating factor outweighed the absent
mitigating factors (<u>id.</u> at 3-4), and therefore imposed a sentence
in excess of the presumptive level (<u>see</u> <u>id.</u> at 1).

[13] As noted in the opening to Section II, Petitioner's instant
Motion for Leave seeks to supplement his challenge to the ACCA
enhancement (and specifically the Court's reliance on his
conviction for attempted sale of cocaine as an ACCA predicate) by
citing two Fourth Circuit decisions (<u>Miller</u> and <u>Hemingway</u>) handed
down after he filed his instant Section 2255 Motion.  (<u>See</u> Docket
Entry 98 at 1-4.)  In the first of those two decisions, the Fourth
Circuit ruled that "<i>Simmons</i> announced a new substantive rule that
is retroactive on collateral review . . . ."  <u>Miller</u>, 735 F.3d at
147.  "In <i>Simmons</i>, [the Fourth Circuit] held that a defendant's
prior conviction for which he could not have received more than a
year in prison under North Carolina's mandatory Structured
Sentencing Act, N.C. Gen. Stat. § 15A1340.17, was not 'punishable'
by more than one year in prison . . . .  After <i>Simmons</i>, an
individual is not prohibited from possessing a firearm unless he
could have received a sentence of more than one year for at least
one of his prior convictions."  <u>Id.</u> at 144-45.  The other Fourth
Circuit decision referenced in Petitioner's instant Motion for
Leave holds that South Carolina's common law offense of assault and
battery of a high and aggravated nature ("ABHAN") "is not
categorically an ACCA violent felony and that the modified
categorical approach has no role to play in the decision of whether
a common law ABHAN offense is an ACCA violent felony."  <u>Hemingway</u>,
(continued...)

## C. Ground Three: Prosecutorial Misconduct

Ground Three lodges a claim of prosecutorial misconduct (Docket Entry 84, ¶ 10(Ground Three), by:

> argu[ing] that the U.S. Attorney used issues broader than guilt and innocence, misquoted testimony, misleading the jury by comments in only stating portions of testimony *not* implying the full view of the testimony, degrading defense counsel, the entire opening statement presenting their theory of the case, predicting what testimony was going to be (none of which was correct), and making false objections, thereby stopping the defense from fully presenting their theory of evidence.

(Docket Entry 85 at 36 (emphasis in original); see also Docket Entry 84, ¶ 10(Ground Three)(a) (referring to "Memorandum of Law in Support" for "[s]upporting facts").) Petitioner, however, has not presented a single, specific example of any of the foregoing, generalized forms of alleged misconduct. (See Docket Entry 85 at 36-39; Docket Entry 97 at 1-10.) In other words, Ground Three "is vague, conclusory, speculative, and unsupported and fails for all these reasons." Cabrera, 2014 WL 6386902, at *9; see also Dyess, 730 F.3d at 359 ("[V]ague and conclusory allegations contained in

---

[13](...continued)
734 F.3d at 338. After carefully reviewing Miller, Simmons, and Hemingway, the arguments in Petitioner's instant Motion for Leave, and the record of this case, the undersigned Magistrate Judge discerns no infirmity in the Court's imposition of the ACCA enhancement, particularly the determination that Petitioner's attempted sale of cocaine conviction qualifies as a serious drug offense. Accordingly, the Court should deny Petitioner's instant Motion for Leave as futile. See United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000) (ruling that "futility of amendment" warrants denial of leave to amend in Section 2255 context).

a § 2255 petition may be disposed of without further investigation by the District Court." (internal quotation marks omitted)).[14]

## D. Ground Four: Improper Judicial Fact-Finding as to ACCA

According to Ground Four, "the Court committed plain error when it made findings of fact pertaining concerning [sic] Petitioner's prior convictions[.]" (Docket Entry 84, ¶ 10(Ground Four).) As this claim's "[s]upporting facts," Petitioner has cited only his "Memorandum of Law in Support." (Id., ¶ 10(Ground

---

[14] "To prevail on a claim of prosecutorial misconduct, a defendant must show (1) that the prosecutor's remarks and conduct were, in fact, improper and (2) that such remarks or conduct prejudiced the defendant to such an extent as to deprive the defendant of a fair trial." United States v. Allen, 491 F.3d 178, 191 (4th Cir. 2007). Despite the lack of any particularized allegation of prosecutorial misconduct, the undersigned Magistrate Judge reviewed the trial transcript and found no evidence of impropriety. Contrastingly, the record confirms that, both at the beginning and the end of the trial, the Court instructed the jury that they must decide the case based only on the evidence presented and that remarks by counsel do not constitute evidence. (See Docket Entry 71 at 29, 33, 34, 38; Docket Entry 73 at 75.) As a result, "any prejudice which might have resulted from [any improper] comments [by the prosecuting attorney] was neutralized by the trial judge, when he instructed the jury that the lawyers' statements are not evidence." United States v. Lopez-Alvarez, 970 F.2d 583, 598 (9th Cir. 1992) (internal brackets, citation, and quotation marks omitted). Finally, in evaluating a prosecutorial misconduct claim, "[s]everal factors are relevant to the determination of possible prejudice to the defendant . . . [including] the strength of competent proof introduced to establish the guilt of the accused . . . ." United States v. Chorman, 910 F.2d 102, 113 (4th Cir. 1990) (internal quotation marks omitted). The Fourth Circuit has held that "[t]he evidence against [Petitioner] and in support of conviction was overwhelming." Williams, 468 F. App'x at 346. Given that circumstance, even if Petitioner had proven specific instances of prosecutorial misconduct, the record likely would not support a finding of the prejudice necessary for him to secure relief.

29

One)(a).)  That Memorandum baldly declares that "[t]he [C]ourt went outside the record of conviction in making its determinations that [Petitioner's] prior convictions qualified as ACCA predicate offenses; making findings of fact which are neither supported by the record of conviction, nor admitted by [him]." (Docket Entry 85 at 40.)  The absence of even a hint as to what improper fact-finding the Court performed renders Ground Four "vague, conclusory, speculative, and unsupported and [causes it to] fail[] for all these reasons."  Cabrera, 2014 WL 6386902, at *9; see also Dyess, 730 F.3d at 359 ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." (internal quotation marks omitted)).

### E.  Ground Five:  Cumulative Effect of Trial Errors

Ground Five alleges that Petitioner's "trial was unfair by the cumulative amount of trial errors resulting in a denial of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution." (Docket Entry 84, ¶ 10(Ground Five).)  To support that claim, the instant Section 2255 Motion states that "[t]he amount of trial errors and errors of prosecution as well as defense counsel as a whole, shows a cumulative effect, only would deny [Petitioner] his right to a fair trial.  Also see Memorandum of Law in Support." (Id., ¶ 10(Ground Five)(a).)  The portion of the cited Memorandum addressing Ground Five describes neither trial errors nor errors by the prosecution or defense counsel, much less

the manner in which any such errors cumulatively denied Petitioner a fair trial. (<u>See</u> Docket Entry 85 at 40-42.)

To the extent Ground Five relies on allegations raised in connection with Grounds One through Four, Petitioner cannot obtain relief based on a "cumulative effect" theory in light of the insubstantiality of his other claims (as shown in Section II.A.-D.) and the overwhelming evidence of his guilt (as determined by the Fourth Circuit, <u>see</u> <u>Williams</u>, 468 F. App'x at 346). <u>See</u> <u>United States v. Basham</u>, 561 F.3d 302, 330 (4th Cir. 2009) ("Pursuant to the cumulative error doctrine, the cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error. Generally, however, if a court determines that none of a defendant's claims warrant reversal individually, it will decline to employ the unusual remedy of reversing for cumulative error. To satisfy this requirement, such errors must so fatally infect the trial that they violated the trial's fundamental fairness. When none of the individual rulings work any cognizable harm, it necessarily follows that the cumulative error doctrine finds no foothold. In the instant case, given the overwhelming evidence against [the defendant], and the fact that [no claimed violations of the defendant's rights] individually work[ed] any cognizable harm . . ., we have little difficulty concluding that cumulatively

there is no error." (internal brackets, citations, ellipses, and quotation marks omitted)).  Ground Five thus fails.

## F.  Supplement:  Alleyne

Petitioner's Supplement asserts that, as a function of the Supreme Court's decision in <u>Alleyne</u>, his "Sixth Amendment Due Process rights were violated by an enhancement under the [ACCA] . . . [because his] prior convictions (having been placed in [his] indictment) should have been proven beyond a reasonable doubt by a jury, as the Sixth Amendment requires."  (Docket Entry 91 at 1.) The Court should deny this claim.

In <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 228-35 (1998), the Supreme Court held that "the fact of a prior conviction that may increase a penalty may be found by the district court and does not need to be submitted to a jury and proven beyond a reasonable doubt.   The *Almendarez-Torres* opinion remains authoritative." <u>United States v. Doe</u>, 593 F. App'x 247, 248 (4th Cir. 2015) (citing <u>United States v. McDowell</u>, 745 F.3d 115, 124 (4th Cir. 2014), <u>cert. denied</u>, ___ U.S. ___, 135 S. Ct. 942 (2015), and <u>United States v. Graham</u>, 711 F.3d 445, 455 n.8 (4th Cir.), <u>cert. denied</u>, ___ U.S. ___, 134 S. Ct. 449 (2013)).  The Supreme Court's decision in <u>Alleyne</u> does not alter that conclusion.

To the contrary, <u>Alleyne</u> states:  "In *Almendarez-Torres*, we recognize a narrow exception to th[e] general rule [that facts which increase a statutory maximum trigger the Sixth Amendment jury

32

right] for the fact of a prior conviction.  Because the parties do not contest that decision's vitality, we do not revisit it for purposes of our decision today." Alleyne, ___ U.S. at ___ n.1, 133 S. Ct. at 2160 n.1 (internal citation omitted).  "[B]ecause Alleyne did not disturb Almendarez-Torres, which authorizes a district court to apply an enhanced sentence based upon its finding of applicable prior convictions, [Petitioner's instant] challenge must fail."  United States v. Croft, 533 F. App'x 187, 188 (4th Cir. 2013) (internal citation omitted); see also McDowell, 745 F.3d at 124 (stating, in wake of Alleyne, that "Almendarez-Torres remains good law, and we may not disregard it unless and until the Supreme Court holds to the contrary").

CONCLUSION

Petitioner has not established any basis for collateral relief.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Docket Entry 84), as supplemented (Docket Entry 91), and his Motion for Leave to File Amended § 2255 [Motion] (Docket Entry 98) be denied without issuance of a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

September 8, 2015

33